of Pennsylvania and he has joined us previously and has always been a great asset to this court so we feel very fortunate to have him with us. Thank you very much. All right just to let you know we have reviewed the records in your cases the briefs and we are familiar with the facts of course how you choose to spend your time is up to you but please don't feel like you need to tell us the facts for our sake. All right with that we will begin with Scott versus United States of America. Good morning may it please the court. I'm Rosemary Kakmus on behalf of Gino Scott and we're here today because the system failed. All of the wonderful checks and balances we have in place did not ensure a fair trial in this case because both of the lawyers involved defense and the Mr. excuse me Mr. Scott's expense yet no one is willing to take any responsibility for it. Let me ask you a question I think there's a problem as well with respect to you know whether it you need to get some water you're welcome to do so if you sorry that's okay with respect to meritorious Brady claims there is potentially an issue. My question is what test would you prescribe for us and of course we have Tompkins also to contend with here but if we were writing on a clean slate what test would you prescribe for us to be able to identify which claims if any should be considered not second or successive. This case gives a good example of the test I believe because what is the test the test is did the government have this evidence and fail to disclose it to the proceedings and after they were concluded then years later the government notifies us of it because another lawyer up in Michigan Massachusetts brought it to his attention and there was no reasonable probability that the defendant in this case could have raised the Brady claim during his first 2255 then he ought to be allowed another shot at a first 2255. Well let me ask you this should there be a requirement that sort of like a Strickler kind of requirement that it be what is a true or a meritorious Brady claim potentially meritorious Brady claim before we are before we could consider whether it could be not a second or successive claim. I don't know that it has to be a meritorious claim. So let me ask you then see that's what troubles me yes because that could mean that any any Brady violation at all no matter how inconsequential and and let me say that Brady violations of course are serious in their own right but no matter how inconsequential to the outcome of the case could then skip the AEDPA bar on second or successive petitions and and that's that's what my concern is. So I wonder why it is that it would not have to pass that Strickler test in order to even be considered. It should pass the test but even and I would say that even if it is a colorable claim it ought to be aired in the system through a first 2255 because it was information that was withheld by the government which is probably one of the most egregious things that can happen in a case. If we are truly allowed to rely on the government's representations, is the government not required to do anything? Not look at its own files? This was in their possession the whole time right and that's a big part of it. And I and I can appreciate why that's an important and big part of this but to me if we're talking about a claim that you know is not meritorious in the end then I am concerned about violating what seems to be clear congressional intent to avoid allowing second or successive petitions involving the discovery of new evidence when there's not a claim of actual innocence. Now I recognize I think there's that in a different category would be the true Strickler claim that doesn't have to show actual innocence but could show but would show a reasonable probability of a different outcome. And perhaps that might that should be the test if there is more than a colorable claim although I believe all claims of prosecutorial misconduct should be aired. If the claim is beyond conceivable but doesn't reach the case of actual innocence there has to be a middle ground and the middle ground would be if it has apparent merit. If it has a substantial basis not and I think that the court in Lopez I believe is the Ninth Circuit discussed this and in that case they said the informant never testified against this defendant. Never said anything. He said the informant testified against someone else. That would be the example of what you're concerned about I believe and in that case since the informant did not provide testimony at trial against the defendant cross-examination against of the informant would not have been affected. But doesn't the test really have to be whether or not the Brady material sort of undermines the outcome of the case? Yes sir. So then we have to look at the Brady material against that what happened at the trial and if the court determines that it doesn't undermine the outcome that yes it was Brady material the government was wrong it should have produced it but at the end of the day it wouldn't it wasn't likely to change the outcome of the case then that should be the end of it then we shouldn't be granting a right to go forward. Yes sir. If the claim and I think that's what the Ninth Circuit had come up with. So then we have to look at the evidence here and say whether or not the undisclosed material if had it been available to the defendant and used on cross-examination would have affected the jury maybe or undermine the outcome of the case in other words if it really wouldn't have mattered in the final analysis because you have to remember here the defendant did know about the prior conviction opinion and knew he was had been paid a hundred and sixty-eight thousand dollars and was and it was like a contingent fee arrangement if the government got a conviction he was going to get a piece of the action I mean that to me is absolutely incredible but now the jury knew that that this guy was a paid witness it was like a witness in a civil case who's going to get in a personal injury case is going to get 20% of the of the verdict for testifying so if that wasn't enough to convince the jury that the guy was not a truthful and shouldn't be believed why should this additional material make any difference plus the fact he in my view he certainly wasn't the major witness in the case the court the district court did not conduct any type of prejudice analysis whether it's prejudice or materiality the court did not conduct that analysis and that analysis should have been conducted in this case the have to look at it and see if it undermined confidence in the outcome and yes of course the judge really did that and when he reviewed the reopened the first 2255 I mean except to the extent your honor that he never reached prejudice on the first 2255 he never reached materiality on the second and he was the judge that tried the case and if nothing else it should go back to him to address those prongs because yes there was other testimony Tamayo the co-defendant testified but the judge knows that as he told the parties at the trial I can't understand a word that guy is saying he could not understand mr. Tamayo and made some statements to the effect of and this is at volume 2 of the trial transcript 121 122 and 135 he is very Tamayo low functioning in his capacity as a witness I can't understand anything he's saying and I don't know if the jury can understand him either and so that takes away from whatever Tamayo said and other than Tamayo there's not really any evidence there of concrete value as to what was agreed upon because the conversation at the hotel was not recorded there are no videos there's no and they say mr. Scott really was there but why was he there being present is not conspiring and that's the big problem here nobody has looked at whether this is a material Brady claim or not or whether counsel's performance in this case prejudiced the defendant whether the confidence in the verdict where it was based in large part on the testimony of mr. Pena is undermined in any way the government didn't disclose it well we can't consider that defense counsel is categorically allowed to rely on the representations of the government the government says that's it you can rely on it so you're not ineffective so the government doesn't have to investigate neither does the defense thank you counsel you've reserved you that's all right you've reserved seven minutes for rebuttal mr. thank you your honor Roberta Bodden for the United States before I get to the substance of our arguments in the court's questions I do want to be sure the court is aware that the representations in our brief about Scott having a life sentence are no longer correct he got executive clemency his sentence was reduced to 264 months let's it dock an entry 161 it but I want to be sure that the facts are right and I wasn't sure you would have seen that if we hadn't brought it up thank you as for our arguments we made a mistake in the prosecution of this case and we didn't discover that mistake until after the first 2255 was resolved but once we brought the mistake to the court's attention every single thing that the court did was absolutely correct this the court recognized that it was bound by Thompson Tompkins and Stewart let me ask you a question about Tompkins it seems to me that in Tompkins would you agree that the Brady is setting aside the whole difference between 2254 and 2255 and yes language we could talk about that another time but would you agree that the Brady claimant issue in Tompkins was clearly not meritorious I mean that's what the isn't that what the court basically said it wasn't meritorious in other words there was no reasonable probability that the evidence that hadn't been disclosed there would would have affected the outcome of the trial your honor I don't recall the Tompkins case getting into a extensive discussion about the merit of the Brady claim I certainly know that Strickler did that that was not a meritorious Brady claim and although Strickler was looking at cause and prejudice and and was not in the context of a successive 2255 I agree that at least Strickler and the California case Lopez or the Ninth Circuit case I thought it was California and those cases actually did examine the merit of the Brady claim I'm not sure that I read Tompkins as having gone into that but for certain Congress knew how to draft a statute that made an exception for a Brady claim and it created in 2255 F an exception in the limitations provision for when a government impediment is removed it did not make that exception for a successive 2255 motion and that actually that statutory construction was one of the things that drove the district court's analysis and I think that is one of the things that have driven the other cases Panetti Stewart and Tompkins included well let me ask if Tompkins did discuss the lack of merit in the Brady claim that mr. Tompkins had why wouldn't its discussion why wouldn't any its relationship to a your honor I'm not sure if I understand the courts question correctly let me try again it wasn't asked that well so let's say that Tompkins relied on the Tompkins discussed the fact that the Brady claim at issue there was not meritorious okay okay if that's the case yes then wouldn't its relationship if any to a and how we have construed dicta in this circuit yes I think it would you know I suppose it the discussion of the merit of the Brady claim might be informative because there is a possibility under 2255 H to bring a Brady claim based on newly discovered evidence if it meets the standard and it's the in it establishes that this new evidence but the conviction would not have occurred that I don't have the statute in front of me but it clear and convincing evidence that we would not obtained a conviction otherwise there are going to be some Brady cases that rise to that level and you know I'd point the court to but even that but I guess I'm talking about the Brady cases where it's meritorious in that there's a reasonable probability that the outcome would have been different but that it doesn't show actual innocence okay I what I'm trying to say is that with respect to this court's examination of the merit of the Brady claim in Tompkins obviously if it doesn't make a meritorious Brady claim it's not going to reach that higher standard for 2255 H so you know to some undisclosed evidence what I'm saying is that Congress drafted a statute that set a much higher standard for newly discovered evidence and there is no exception in it for a Brady claim but and yet the Supreme Court and Panetti has found that the term second or successive is sort of a term of art yes yes and something can be second in time filed without qualifying a second or successive right and Stewart explains the difference between the two of them previously undiscoverable but facts that existed facts that were previously undiscoverable but existed newly discovered evidence is within 2255 H and that governs what happened in Panetti what happened in Martinez Villarreal what happened in Stewart these are facts that didn't exist it's not just that they weren't discoverable they hadn't happened well well let's let's talk about that okay because one of the things that Panetti relies on is Rhines and in Rhines what happened was the district court had allowed the petitioner to go back and had stayed and obeyed his claim his federal claim while he exhausted additional state claims mm-hmm and the court said in that case that it was okay for him to do that for two reasons one he demonstrated good cause for his not having exhausted them previously it's not that they didn't exist but he demonstrated good cause for not having exhausted them previously and two they were potentially meritorious and it seems to me that both of those kinds of factors would also apply in the case of a true Brady violation where it was beyond the power of the defendant to have discovered the claim previously I recognize it's in a different context but still and to you know if it's truly a meritorious Brady claim that is that there's a reasonable probability that the outcome could have been different then it seems very similar to me as the and so it seems to me like those are considerations that we need to account for when we look at whether a claim counts as second or successive merely because it's second in time and I wonder what your thoughts are on that with respect to Rhines I didn't study that because I don't think any of us cited it and I didn't pick up on the distinctions when I read Panetti but if it was a post-AEDPA case I'm not sure exactly what I would say about it I suspect it was it was okay then I think that those cases may have informed the Supreme Court's analysis but in the end the Supreme Court in Panetti said this is a narrow exception these are extremely unusual circumstances and they're not circumstances that are contemplated expressly by another provision of the statute except that it didn't say Panetti is the the Ford claim is the only exception it specifically said there are however narrow exceptions with an S so obviously that and the fact that it refers to Rhine and it actually also refers to another case Castro I know what Castro right I think Rhines is the one that I wanted to talk about because I think it's more in line with what we're talking about here but it seems to me like it was outlining specific considerations for a court to consider when it was evaluating whether a claim was second or successive or merely second in time and and you're reading it though to say no these aren't considerations that you look at to make that determination Panetti is sort of an outlier and it was just designating a that's how I would read it yes and I think that reading is also what this court used in Stewart I mean Stewart makes clear that there's a difference between a claim that didn't exist and certainly a conviction that set aside that had served as a predicate that didn't exist you had to go and do that later and and a claim that you just didn't know about because it was has room in its precedent and the text of 2255 to have made this a fresh 2255 claim and I don't think the district court did either I would like to talk a little bit about what the district court did and the basis for its ruling there the court certainly had the discretion to reopen the original 2255 and re-examine the ineffective assistance of counsel claim and it was correct to do that but it was also correct to resolve the case the way that it did based on the performance prong it did not need to have an evidentiary hearing and there is no need to send this case back for an evidentiary hearing this is not a case like the Turner case that we cited a supplemental authority where the scope of the undisclosed evidence is far-reaching there's all points of different categories the court has to figure out exactly what the evidence is we know what the evidence is that was undisclosed there's two pieces and they're small they're small little additional pieces that added to the massive impeachment already existing because of a hundred and sixty eight thousand dollars over the course of three years an additional fourteen thousand dollars just for this case that's one-third of his annual income and probably a whole lot more than a lot of the jurors were making so there was no need for an evidentiary hearing all the court had to figure out was what the undisclosed evidence meant in the context of this case but did the court did the court make a finding that there was no prejudice no it didn't it went straight on the performance prong but it wasn't wrong about that to set aside the court's decision on the performance prong you have to do two things two things that Strickland and Chandler and lots of other cases say you can't do first you would have to examine both defense counsel's conduct of this case with 20-20 hindsight you can't be influenced about the fact that we figured out later that we'd made a mistake there was a mistake yes but that doesn't mean that what counsel knew then at the time the trial was being conducted was and his actions were ineffective assistance that doesn't mean that he performed efficiently the court itself something I guess I'm asking a different question I'm talking about prejudice on the Brady on the Brady claim not on the ineffective assistance well as the defense brief points out and is this court's precedent and Strickland point out that prejudice standard is very very similar whether there was a reasonable probably oh but the point is if we're asking about whether a Brady claim constitutes a second or successive mm-hmm claim or rather just second in time claim then it doesn't really matter I don't think maybe it doesn't you can correct me whether the court rejected the ineffective assistance claim on the performance well there was no there was there's no room in Gonzales for the court to have reopened the original 22 55 with a substantive Brady claim it could only go back to the claims that were raised in the original 22 55 and that's what it did so it re-examined the ineffective assistance of counsel claim raised in the original 22 55 it had the discretion to do that and it was right to do it and it was right in the way it resolved that if if it had reopened the original 22 55 for a new substantive claim that would have been the same thing as granting a new 22 55 which Stuart and Tompkins said you can't do right and I understand all of that but my point is simply we're trying to decide yes there are two things we're trying to decide did the district court act correctly under the precedent and our circuit and in the Supreme Court but also as a part of that inquiry we have to decide whether a Brady claim can be brought in this circuit as a second in time claim and not qualify as a second or successive claim mm-hmm okay well that that is what the Ninth Circuit did in Lopez it said yeah there's no special exception for Brady but even under pre AE DPA law this guy wouldn't have succeeded because a meritorious it has to be a meritorious Brady claim to get by the old abuse of the writ law so that's the way the Ninth Circuit looked at it my argument to the court is that I don't think that we can do that anymore I think the statute controls and so of course the statute controls but that is a circular argument because we're trying to decide what second or successive means and so your argument assumes that second or successive means meritorious Brady claims and my position is I it might but maybe it doesn't your honor I my argument is that second or successive means based on newly discovered evidence not evidence that had not existed before that's the distinction I'm making and I think that's the distinction that this court made in Tompkins and newly discovered to whom newly discovered but previously undiscoverable by the defendant that's what how about withheld I don't think that Tompkins made that distinction respectfully your honor I'm I'm on before you sit down let me ask you one more question about Tompkins and I'm not sure I read it as broadly as you do mr. come mr. Tompkins asked the court to hold that any claim based on new evidence is not right for presentation in the Brady Oh or Giglio context and the court rejected that argument yes so it seems to me that what Tompkins may have rejected was the broad rule that the petitioner in Lopez brought and which was rejected by the Ninth Circuit so I'm not sure Tompkins actually ruled on the possibility that was left open in Lopez whether a meritorious Brady claim would be second or successive do you have a response to that well that goes back to my earlier recollection that relative relative merit it I think it just ruled that a Brady claim there's no exception for that I don't I don't think it actually examined for any Brady claim that's right I think I think what it held is that 2255 H means what it says and newly discovered evidence is newly discovered evidence regardless of where it came from and I think that's the judgment that Congress made but even if you were to hold like Lopez that a meritorious Brady claim might be accepted you still don't change the result in this case because this was a witness who was peripheral he offered evidence that was important yes but he wasn't the star witness and you know what you might be perfectly correct on that mm-hmm but wouldn't wouldn't it be better practice for us to send it back to the district court to decide that in the first instance I don't think you have to for two reasons I agree we don't have to but why shouldn't we well because this is not a claim if you look at the cases that Scott cites that talk about set a preference for sending a case back they are all cases where there was substantial evidentiary development about what the newly discovered previously undisclosed evidence was we didn't have to do that in this case we knew what it was the only task was to examine that evidence in the context of the record which this court is just as capable of doing as the district court did thank you a couple of brief points mr. Clark mr. Scott was very fortunate that he did get clemency but this is still for our purposes should be considered a life case because defense counsel walked in to the court and said well it doesn't really matter to our analysis if he got life or a month only for purposes of the ineffective assistance to show that counsel knew it was life and was very concerned about what else was out there but as soon as he hears well the government says would have given you anything if there was anything else okay doesn't matter if it's life the clients not allowed to hear anything he doesn't need to because the government says he's guilty and in effect what it does is say if the government doesn't investigate but represents something is not there it's okay for the defense to not investigate and believe it's not there and that categorical rejection of the performance prong of ineffective assistance can't stand scrutiny as for the newly discovered evidence and we keep calling it newly discovered but it wasn't newly discovered to anybody except mr. Scott the prosecutor did say that he never heard about it the government now our appellate government recognizes there was a mistake made nobody has explored in the district court or otherwise who made the mistake obviously the DEA had all this evidence in their file and an attorney a prosecutor from Massachusetts before he used this informant wanted to know who he was using so he just he came down and there was no communication the US Attorney's Office in Tampa wouldn't use him again about because he's not trustworthy and that goes back to the government says there's small pieces of evidence here and there was massive cross-examination impeachment to an extent that might be true depending on how you view the trial and if anyone's going to view the trial in the first instance it should be the district court that was there because the district court knows how important this was you have to read not only the testimony but the opening and closing the government relied on mr. Pena extensively throughout its closing argument throughout all the arguments of court and yet they now say he's a peripheral witness he was the strongest witness they had at the time Tamayo's testimony was embarrassing it was not understandable according to the district court's judge who heard it I didn't hear it but the judge did and he thought it was not understandable and that brings us to all this impeachment that came out there were two things he had a prior conviction okay he had a prior conviction in 1996 and the government explained to the jury at length this man paid his debt to society he finished his supervised release and went to work to right the wrongs that are out there he wants to clean up the street and that's exactly what mr. Pena said also oh I want to help the government get these bad guys off the well you're getting paid too and this is an outrageous sum of money and it's outrageous he got 20% of the cut of what was seized as well however as the government explained we all get paid for working this was his job the government emphasized this was his job of course he got paid if it was his job the rehabilitating him and putting him up there next to the DEA agents their job we respect them because their job is to clean up the streets to do what they do and that's the same job that mr. Pena has nobody mentioned the fact that DEA knows good and well they won't use him over in Tampa he's not trustworthy DEA knows that he lied about the heroin DEA knows that he never came forward and said hey you know the guy who got me involved with y'all well we kind of got involved because and the first deal I did I got a cut of his money and I wasn't was he working for DEA at the time it's not clear but in any event he stole the cocaine they stole it from these drug dealers over here and the DEA didn't find out about it until the drug dealers were caught and they said hey these two informants stole the drugs etc etc and when DEA found out about this the government and the district court was quick to say oh DEA you know they took care of it and mr. Pena right away admitted it he never admitted to anything until he got caught though by the feds with his pants down they knew he lied DEA knew he lied and so he admitted it at that point and that does nothing to rehabilitate his truthfulness or in this case his dishonesty and those pieces of impeachment that were given over were totally ineffective compared to what was really out there and that agent got up there and testified from DEA how we used mr. Pena and he was so good and that type stuff if they knew if the jury knew that DEA wouldn't use him anymore in some places but of course Jacksonville said what just ignore that the Jacksonville DEA I'm not saying the prosecutor because the prosecutor didn't even bother looking at their file and that's okay that's not okay and that's not how the system works and either ground is reason to send it back to the district court thank you thank you